# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Robert E. Blackburn

Civil Action No. 09-cv-00881-REB

MELODY M. DAVIS,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

# ORDER REVERSING DISABILITY
# DECISION AND REMANDING TO COMMISSIONER

**Blackburn, J.**

The matter before me is plaintiff's **Complaint** [#3], filed April 16, 2009, seeking review of the Commissioner's decision partially denying plaintiff's claim for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that she is disabled as a result of lower back pain, congestive heart failure, borderline personality disorder, and fibromyalgia. After her applications for disability insurance benefits and supplemental security income benefits were denied, plaintiff requested a hearing before an administrative law judge. This hearing was held on March 5, 2007. At the time of the hearing, plaintiff was 32 years old. She has a high school equivalency diploma and past relevant work experience as a waitress,

receptionist, retail clerk, and mail room clerk. She has not engaged in substantial gainful activity since April 10, 2006, her alleged date of onset.

The ALJ found that plaintiff was not disabled and therefore not entitled to disability insurance benefits or supplemental security income benefits. Although the medical evidence established that plaintiff suffered from severe impairments, the judge concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. The ALJ found that plaintiff had the residual functional capacity to perform light work with certain postural and mental limitations. Although this finding precluded plaintiff's past relevant work, the ALJ determined that there were other jobs existing in significant numbers in the national and local economies that plaintiff could perform. He therefore found plaintiff not disabled at step five of the sequential evaluation. Plaintiff appealed this decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal court.

## II. STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if her physical and/or mental impairments preclude her from performing both her previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." **Campbell v. Bowen**, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an

2

individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. **See Kelley v. Chater,** 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

> 1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.
>
> 2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.
>
> 3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.
>
> 4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.
>
> 5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(b)-(f).[1] **See also Williams v. Bowen** 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four

---

[1] Throughout this opinion, although I cite only to sections of Part 404 of Title 20 C.F.R., which include the Commissioner's regulations relating to disability insurance benefits, identical, parallel regulations can be found in Part 416, relating to supplemental security income benefits.

3

steps of this analysis. ***Bowen v. Yuckert***, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. ***Id.*** A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. ***Casias v. Secretary of Health & Human Services***, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. ***Hamilton v. Secretary of Health and Human Services***, 961 F.2d 1495, 1497-98 (10th Cir. 1992); ***Brown v. Sullivan***, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. ***Brown***, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. ***Hedstrom v. Sullivan***, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." ***Musgrave v. Sullivan***, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." ***Thompson v. Sullivan***, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. ***Id.***

### III. LEGAL ANALYSIS

Plaintiff's arguments on appeal focus principally on numerous alleged errors in the ALJ's weighing of the various medical opinions of record. I agree that the ALJ failed to adequately substantiate his reasons for rejecting the opinions of the treating sources and assigning determinative weight to the opinions of the state agency doctors. The decision therefore must be reversed and this case remanded to the Commissioner for a more precise and thorough consideration of the evidence of record and a proper weighing of the various medical opinions of record.

The opinion of a treating source is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record" and cannot be rejected absent good cause for specific and legitimate reasons clearly articulated in the hearing decision. 20 C.F.R. § 404.1527(d)(2); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003). Good cause may be found when a treating source opinion is brief, conclusory, or unsupported by the medical evidence. *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987). Nevertheless, even if a treating source opinion is not accepted, "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." **Social Security Ruling 96-8p**, 1996 WL 374184 at *7 (SSA July 2, 1996).

Dr. Precious S.V. Castro-Flores was plaintiff's primary care physician as of the date of the hearing and submitted a statement in support of plaintiff's claim for disability.

5

(Tr. 353-354.)[2]  The ALJ rejected this opinion outright, stating that it was not supported by Dr. Castro-Flores's own office notes and was contradicted by "other evidence of record, including hospital records and examinations[, as well as] by Med-9 forms completed by this physician." (Tr. 15.)  Likewise, the ALJ assigned little weight to the opinion of plaintiff's treating psychiatrist, Dr. Barry Coe, on the grounds that it was "based on very little contact with the claimant, and . . . is contradictory to the other evidence of record."  (Tr. 14.)

To the extent the ALJ suggested that these treating source opinions were not supported by or were inconsistent with the record evidence, his failure to link such conclusions to any specific evidence in the record makes them unreviewable and therefore insupportable.  "The decision must articulate the ALJ's reasoning such that later reviewers can identify both the weight that was actually assigned to the [medical source] opinion and the reasons for that weight." *Andersen v. Astrue*, 2009 WL 886237 at *3 (10th Cir. Apr. 3, 2009) (citations omitted); *see also* **Social Security Ruling 96-2p**, 1996 WL 374188 at *5 (SSA July 2, 1996) (ALJ's decision must contain reasons "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight").  The ALJ's boilerplate incantations and bare conclusions are not adequate

---

[2]  Dr. Castro-Flores opined that plaintiff could lift and carry no more than 7 pounds occasionally, sit for 25 minutes at a time and 2 to 3 hours in an 8-hour workday, walk or stand no more than 10 minutes at a time and no more than 1 hour total a day, and needed to lie down every 30 minutes for 20 minutes at a time.  She stated, without particular reference to the medical evidence, that her opinion was based on the findings of physical examinations and diagnostic tests as well as the opinion of Dr. Patrick Timms, a rheumatologist to whom she referred plaintiff.  (Tr. 353-354; *see also* Tr. 329-330.)

substitutes for actual findings, and do not constitute substantial evidence.[3]  **See Hardman v. Barnhart**, 362 F.3d 676, 679 (10th Cir. 2004).

Nor do the other reasons on which the ALJ relied to discount Dr. Castro-Flores's and Dr. Coe's opinions ultimately bear even the most superficial scrutiny. The Med-9 forms Dr. Castro-Flores filled out superficially seem to suggest that plaintiff was not disabled. (Tr. 273, 275.)[4]  **See Kelley,** 62 F.3d at 338 (impairment disabling if it can be expected to last at least 12 months). However, the first, filled out in December, 2006, suggested that plaintiff's impairments could be expected to prevent her employment for 6 to 8 months,  (Tr. 275), while the second, filled out in August, 2007 (i.e., eight months later), stated more generally that plaintiff's condition was expected to be disabling "[l]ess than 12 months" (Tr. 273). Dr. Castro-Flores filled out her disability questionnaire in May, 2008, less than 12 months afterward. (Tr. 354.) Clearly, then, these temporally contiguous opinions, far from being inconsistent with one another, suggest that Dr. Castro-Flores's earlier expectations as to the duration of plaintiff's impairments ultimately were not realized. As for Dr. Coe's opinion, the ALJ's determination that it was entitled to less weight because Dr. Coe had been treating plaintiff only a short time

---

[3]  Although the Commissioner notes correctly that "[t]he ALJ is not required to discuss every piece of evidence, nor does the Court expect him to list every diagnosis," **Clifton v. Chater**, 79 F.3d 1007, 1009-10 (10th Cir.1996), the utter failure to substantiate his statements is not within the purview of that doctrine.  **See also Cox v. Apfel**, 2000 WL 1472729 at *8 (D. Kan. Feb. 24, 2000) (ALJ's statements that he considered the "entire record" sufficient only when record provides no reason to question its validity) (citing **Hamilton v. Secretary of Health & Human Services**, 961 F.2d 1495, 1498-99 (10th Cir.1992)).

[4]  The Med-9 form "is used by the State and County Departments of Human Services in determining medical eligibility for the State Aid to the Need Disabled (AND) program.  To be eligible for this program, an individual must have a total disability that has lated or is expected to last six (6) months or more, and precludes him/her from working." (Tr. 272.)  Courts of this circuit have rejected attempts to categorically find that Med-9 forms are entitled to no weight, especially when they have been completed by a treating source.  **See Andersen**, 2009 WL 886237 at * 6-7; **Angster v. Astrue**, 703 F.Supp.2d 1219, 1228 n.2 (D. Colo. 2010).

7

is particularly curious, perhaps even disingenuous, in light of the fact that the opinions of the state agency physicians, who *never* examined plaintiff, were afforded determinative weight.  **See Sanchez v. Astrue**, 2009 WL 4810696 at *4 n.5 (D. Colo. Dec. 10, 2009).[5] In sum, the ALJ did not cite good reasons, specifically tied to the evidence of record, for discounting these treating source opinions.

Nor did the ALJ's consideration of the other evidence of record show a more thorough analysis of the evidence.  For example, the ALJ utterly failed to mention the records and opinions of Dr. Katharine Leppard, who treated plaintiff around the time of her alleged date of onset, at all.  The Commissioner argues that he was not required to do so, noting that Dr. Leppard's opinion that plaintiff was not "capable of returning to gainful employment given her psychiatric issues, as well as the chronic low back pain" (Tr. 208), goes to an issue reserved to the Commissioner and is therefore not entitled to any particular weight, *see* 20 C.F.R. § 404.1527(e); **Sosa v. Barnhart**, 2003 WL 21436102 at *5 (D. Kan. April 10, 2003), *adopted*, 2003 WL 21428384 (D. Kan. Jun. 17, 2003).  The Commissioner's own interpretation of the regulations he is charged with administering belies this argument.  Although not binding on the Commissioner, "opinions from any medical source about issues reserved to the Commissioner must never be ignored." **Social Security Ruling 96-5p**, 1996 WL 374183 at * 1 (SSA July 2, 1996).  The ALJ's failure to discuss Dr. Leppard's treatment records or even acknowledge her role as a treating physician thus also constitutes error.

---

[5]  It should be noted, however, that the ALJ's discussion of state agency doctors' opinions is no more illuminating or well-substantiated than that of the treating doctors' opinions. (*See* Tr. 14, 15.)

The ALJ did discuss in somewhat more detail the findings of the consultative examiner, Dr. Terry Jones. (Tr. 14, 239-244.) Yet although this report certainly contains the statements set forth in the ALJ's decision – that plaintiff took no responsibility for herself and was utterly dependent on friends, that she was vague about her alleged symptoms of paranoia and had an adequate fund of memory despite claiming problems in that regard, that she gave poor effort, and that she had a Global Assessment of Functioning ("GAF") score of 65[6] – its ultimate conclusion was far more stark:

> This claimant is in need of intensive dialectical behavioral therapy and medications, a combination of medications including antipsychotic medications, antidepressant medication, antianxiety medication, etc., as well as mood normalizers, and this claimant will not progress in a positive direction until she has a very intensive program involving that type of therapy in conjunction with those medications. She expressed no desire to have that kind of treatment, but it is clear that will be the only approach that would be beneficial for her.

(Tr. 244.) The ALJ's summation of this rather serious prescription as merely recommending that therapy and medication "would be helpful" to plaintiff, buried in a recitation of her superficially less marked limitations, smacks of cherry-picking. *See Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004). The ALJ himself is not qualified to determine that Dr. Jones's findings did not support such apparently extreme

---

[6] "The GAF is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'" ***Langley v. Barnhart***, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004) (quoting American Psychiatric Association, ***Diagnostic and Statistical Manual of Mental Disorders*** at 32 (Text Revision 4th ed. 2000) ("DSM-IV")). A GAF score of 61-70 indicates "some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well." DSM-IV at 32.

9

treatment recommendations, *see McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002), and to the extent it was not clear how those findings related to the diagnosis and ultimate conclusion, it was the ALJ's responsibility to recontact Dr. Jones for further clarification, *see* 20 C.F.R. § 404.1512(e); **Social Security Ruling 96-5p**, 1996 WL 374183 at *6.

The ALJ also discounted the evidence from Dr. Patrick Timms, a rheumatologist to whom Dr. Castro-Flores referred plaintiff for assessment of possible fibromyalgia. The ALJ noted Dr. Timms saw plaintiff only once, a rationale that is no more persuasive here than it was in connection with Dr. Coe's opinion. **See Sanchez**, 2009 WL 4810696 at *4 n.5. In addition, the ALJ found the opinion entitled to limited weight because Dr. Timms performed "no MRIs, x-rays, or nerve conduction studies," found full range of motion in all plaintiff's extremities, and apparently based his opinion on plaintiff's reports of her symptoms. (Tr. 15, 329-330.)

These findings evidence a profound misunderstanding of the very nature of fibromyalgia. As the Tenth Circuit has recognized, "[t]here are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and – the only symptom that discriminates between it and other diseases of a rheumatic character – multiple tender spots[.]" **Gilbert v. Astrue**, 2007 WL 1068104 at *4 (10th Cir. April 11, 2007) (quoting **Sarchet v. Chater**, 78 F.3d 305, 306 (7th Cir. 1996)). More to the point, "its symptoms are entirely subjective." *Id.* (quoting **Sarchet**, 78 F.3d at 306). **See also Rogers v. Commissioner of Social Security**, 486 F.3d 234, 243 (6th Cir. 2007) ("[U]nlike medical conditions that

can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs."). Thus, fibromyalgia "is diagnosed entirely on the basis of patients' reports and other symptoms." *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004). *See also Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2nd Cir. 2003) (noting that "a patient's report of complaints, or history, is an essential diagnostic tool" in fibromyalgia cases). Accordingly, lack of medical testing and minimal objective medical findings are typical in fibromyalgia cases, and persons suffering from fibromyalgia often "manifest normal muscle strength and neurological reactions and have a full range of motion." *Preston v. Secretary of Health and Human Services*, 854 F.2d 815, 820 (6th Cir. 1988). Clearly, then, the ALJ's reasons for discrediting Dr. Timms's opinions do nothing to bolster the disability decision, either.

Moreover, the ALJ failed to follow the correct procedure for weighing treating source opinions against other medical source opinions or other medical evidence in the record. "When a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports to see if they outweigh the treating physician's report, not the other way around." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (quoting *Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995)) (internal quotation marks omitted). Here, the ALJ merely assigned a weight to each medical source opinion and then relied on those to which he afforded significant weight.[7] The ALJ is not entitled to rely on non-treating source opinions merely by default simply

---

[7] Plaintiff also is correct that the residual functional capacity ultimately found by the ALJ fails to account for all the limitations suggested by these opinions, without explanation.

11

because he discounts a treating source opinion. Instead, he must explain why the other medical source opinions of record are sufficiently persuasive to trump the treating source opinions.

Thus, although conflicts in the evidence are generally for the ALJ to resolve, *Reyes v. Bowen*, 845 F.2d 242, 245 (10th Cir. 1988), it is not possible in this instance for me to determine that the ALJ's choice between the various medical source opinions was justified, *see Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that ALJ is required to "'ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case'") (quoting **Social Security Ruling 06-03p**, 2006 WL 2329939 at *6 (SSA Aug. 9, 2006)). Moreover, given how permeated the decision is with error, I conclude that harmless error review is not appropriate in this case. Based on the record before me, I cannot "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). On the other hand, and for this same reason, I cannot find that this case presents an appropriate occasion for the exercise of my discretion to direct an award of benefits in plaintiff's favor. *See Nielson v. Sullivan*, 992 F.2d 1118, 1122 (10th Cir. 1993).[8]

---

[8] I do not intimate by this ruling that plaintiff is or should be found disabled.

**THEREFORE, IT IS ORDERED** as follows:

1. That the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is **REVERSED**;

2. That this case is **REMANDED** to the ALJ, who is directed to

   a. Reevaluate plaintiff's residual functional capacity at step four of the sequential evaluation process, articulating fully his findings in this regard and properly weighing the various medical opinions of record;

   b. Recontact any treating, consultative, or reviewing source for further clarification of his or her findings, seek the testimony of medical experts, order subsequent consultative examinations, or otherwise further develop the record as he deems necessary;

   c. If necessary, redetermine at step five of the sequential evaluation process whether there are other jobs existing in significant numbers in the local and national economies that plaintiff can perform within her mental and physical residual functional capacity;

   d. Reassess the disability determination; and

3. That plaintiff is **AWARDED** her costs, to be taxed by the Clerk of the Court pursuant to Fed.R.Civ.P. 54(d)(1) and D.C.COLO.LCivR 54.1 and 28 U.S.C. § 2412(a)(1).

Dated September 23, 2010, at Denver, Colorado.

BY THE COURT:

Robert E. Blackburn
United States District Judge